**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID HUTZELL,** *et al.***,** | : | |
| | : | **Case Nos. 2:22-cv-02930** |
| | : | **1:22-cv-00437** |
| **Plaintiffs,** | : | **2:22-cv-03149** |
| | : | **2:22-cv-03174** |
| | : | **1:22-cv-00448** |
| | : | **1:22-cv-00444** |
| **v.** | : | **3:22-cv-00223** |
| | : | **3:22-cv-00233** |
| | : | **3:22-cv-00242** |
| **POWER HOME SOLAR, LLC,** *et al.***,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge Deavers** |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on the following motions: Defendant Jayson Waller's Motion to Dismiss Plaintiff Berger's Amended Complaint (ECF No. 53); Defendant Jayson Waller's Motion to Dismiss Plaintiffs' Amended Complaint (ECF Nos. 68–75); Defendant GoodLeap, LLC's Motion to Dismiss Amended Complaint and Compel Arbitration (ECF Nos. 76–83); Defendant Trivest Partners, L.P.'s Motion to Dismiss the Complaint (ECF No. 84); and Plaintiffs' Combined Motion for Limited Discovery (ECF No. 85).[1]

Defendant Waller's and GoodLeap's Motions are almost identical, irrespective of the Plaintiffs to whom each Motion is directed. This Court thus considers each set of Motions as a consolidated Motion against all Defendants (albeit excluding the *Berger* Defendants from

---

[1] Earlier-filed motions in this case are Plaintiffs' first Motion to Conduct Limited Discovery on Whether the Arbitration Provisions at Issue are Enforceable (ECF No. 28); and Defendant Jayson Waller's first Motion to Dismiss for Failure to State a Claim (ECF No. 33). Both motions were filed before Plaintiffs filed their Amended Complaint. (ECF Nos. 59–66). Because these motions were resubmitted after Plaintiffs filed their Amended Complaint, this Court considers only the most recent versions of each motion. As such, the first versions of these motions (ECF Nos. 28, 33) are moot.

1

Defendant GoodLeap's Motion because their Complaint did not name Defendant GoodLeap). Defendant Trivest's Motion is a consolidated Motion against all Defendants.

For the reasons set forth below, this Court **GRANTS** Defendant Jayson Waller's Motions to Dismiss the *Berger* Plaintiffs' Amended Complaint (ECF No. 53); Defendant Jayson Waller's Motions to Dismiss Plaintiffs' Amended Complaint (ECF Nos. 68–75); Defendant GoodLeap, LLC's Motion to Dismiss Amended Complaint and Compel Arbitration (ECF Nos. 76–83); and Defendant Trivest Partners, L.P.'s Motions to Dismiss the Complaint (ECF No. 84). This Court **DENIES AS MOOT** Plaintiffs' first Motion to Conduct Limited Discovery on Whether the Arbitration Provisions at Issue are Enforceable (ECF No. 28); Defendant Jayson Waller's first Motion to Dismiss for Failure to State a Claim (ECF No. 33); Plaintiffs' Combined Motion for Limited Discovery (ECF No. 85); and Defendant Trivest Partners, L.P.'s Motions to Dismiss the First Amended Complaint (ECF Nos. 110–117).

## I.   BACKGROUND

### A.  Factual Background

The Complaints filed by Plaintiffs in each of these nine cases are substantially similar, as are the facts and allegations contained therein. Given the nearly identical Complaints in each case, this Court issued an order consolidating the cases *sua sponte.* (ECF No. 50). This Court thus recites the common facts of this case as Plaintiffs allege them across the consolidated cases, specifying the facts on a party-specific basis where necessary.

Plaintiffs are a group of customers who are dissatisfied by their business transactions with Defendants. Specifically, Plaintiffs accuse Defendants of selling them, through the execution of loans, home solar equipment that turned out to be defective. Plaintiffs are David and Debbi Hutzell (2:22-cv-2930, hereinafter "*Hutzell*"); Nicholas Heiland and Jessica Thornton

(1:22-cv-00437, hereinafter "*Heiland*"); Tamara Spencer-Ward and Michael Ward (2:22-cv-03149, hereinafter "*Spencer-Ward*"); Richard Annon and Tracey Annon (2:22-cv-03174, hereinafter "*Annon*"); Denise Farag (1:22-cv-00448, hereinafter "*Farag*"); Erik Steffen and Jennifer Robb (1:22-cv-00444, hereinafter "*Steffen*"); Eric Shultz (3:22-cv-00223, hereinafter "*Shultz*"); Teri Whitaker (3:22-cv-00233, hereinafter "*Whitaker*"); and Craig and Amanda Berger (3:22-cv-00242, hereinafter "*Berger*"). Defendants are Power Home Solar, LLC d/b/a Pink Energy ("Pink Energy"); GoodLeap, LLC; Jayson Waller; Digital Federal Credit Union (with respect solely to the *Berger* Plaintiffs); and Trivest Partners, L.P. Unlike Plaintiffs in the other eight cases, Berger did not sue GoodLeap, LLC, but instead sued Digital Federal Credit Union.

Defendant Power Home Solar, LLC (d/b/a, and hereinafter referred to as, "Pink Energy") is a Delaware solar company licensed to transact business in the State of Ohio. (ECF No. 59 ¶ 2). Pink Energy filed for bankruptcy in the Western District of North Carolina on October 7, 2022, receiving a stay that was later partially lifted to allow Plaintiffs to pursue their claims against Pink Energy's insurance coverage. (*Id*. ¶ 3). Defendant GoodLeap, LLC, ("GoodLeap") is a California limited liability company that provided financing to Plaintiffs (except the *Berger* Plaintiffs) in their purchases of the Pink Energy solar equipment. (*Id.* ¶ 4). Defendant Digital Federal Credit Union is a federal credit union situated in Massachusetts that provided financing to the *Berger* Plaintiffs. (ECF No. 12 ¶ 4). Defendant Trivest Partners, L.P. ("Trivest") is a Florida limited partnership that manages several private funds; the company's portfolio includes a 25% ownership in Pink Energy. (*Id*. ¶ 5). Defendant Jayson Waller, a resident of North Carolina during the relevant period, is the founder and Chief Executive Officer of Pink Energy.

(*Id*. ¶ 7). Plaintiffs refer to Pink Energy, Trivest, and Waller collectively as the "Pink Energy Group." (*Id*.).

Each set of Plaintiffs entered into a "Solar Energy System Purchase & Installation Agreement" (the "Sales Agreement") with Pink Energy and, except for the *Berger* Plaintiffs, also signed a Loan Agreement with Defendant GoodLeap. (*Id*. ¶ 6). The *Berger* Plaintiffs entered into the Loan Agreement instead with Defendant Digital Federal Credit Union. (ECF No. 12 ¶ 6). Plaintiffs attached copies of the Sales Agreement and the Loan Agreement to their Amended Complaints (the "Consolidated Complaints").

In 2018, Trivest purchased a 25% ownership interest in Pink Energy and, "upon information and belief," became immediately involved in Pink Energy's day-to-day operations. (*Id*. ¶¶ 40–42). Plaintiffs describe Trivest as a "control-based" private equity investor. (*Id*.). As part of its involvement, Defendant Trivest "got to work implementing a series of improvements in collaboration with Waller," and undertook at least a portion of Pink Energy's hiring and recruitment responsibilities. (*Id*. ¶¶ 43–45).

Between 2018 and 2020, each set of Plaintiffs initiated a search for vendors equipped to install solar equipment in their homes. (ECF No. 12 ¶ 11; ECF No. 59 ¶ 11). During this time, the Pink Energy Group advertised to the public that their solar equipment was of marketable quality and efficiency. (ECF No. 59 ¶ 12). Plaintiffs allege that those representations were false and fraudulent. (*Id*. ¶ 13). Plaintiffs arranged to purchase solar panel equipment from Pink Energy in reliance upon the veracity of the Pink Energy Group's representations. (*Id*. ¶ 14). Soon thereafter, an "agent/employee of Pink Energy and/or Defendants GoodLeap, Trivest, and/or Waller" scheduled appointments to meet each of the Plaintiffs at their various residences. (*Id*. ¶ 15). The agent/employee represented to each set of Plaintiffs that they would experience a

"significant reduction" in their electrical bill and additional savings from federal and/or state tax credits once they installed the Pink Energy-produced solar equipment into their residences. (*Id*. ¶ 16). Plaintiffs allege that the Pink Energy Group sold its solar equipment to customers at a high markup price. (*Id*. ¶ 19). "Upon information and belief," the Pink Energy Group directed and trained its employees to engage in high-pressure "hard-sell tactics" such as representing to customers that the tax credits were time-sensitive and making other inaccurate promises to encourage customers to sign their contracts quickly and with minimal review. (*Id*. ¶ 23). "Upon information and belief," Defendant Waller developed all or most of the sales techniques and scripts used by the Pink Energy Group—one article quotes Waller as acknowledging that he "started running the sales department and training reps [him]self." (*Id*. ¶ 25). From 2017 until "sometime after 2018," Waller attended all or substantially all of Pink Energy's sales meetings and routinely encouraged Pink Energy's sales agents to engage in hard-sale tactics. (*Id*. ¶¶ 26–27). Waller wrote in a 2021 book that he "know[s] the company's business inside and out," and that "[w]hen I motivate our sales guys today, I've been where they are." (*Id*. ¶ 28).

Pink Energy closed its doors in late September 2022. (*Id*. ¶ 37). Another of Waller's companies, ISI Alarms, closed its doors around the same time after facing enforcement actions across several states. (*Id*.). "Upon information and belief," the Pink Energy Group trained its employees to use similar sales tactics as those used at ISI Alarms. (*Id*. ¶ 38).

The process for onboarding customers, including Plaintiffs, went as follows. The sales representative for "Defendants and Pink Energy" would induce sales by representing to Plaintiffs that their purchases would entitle them to tax credits, but that those incentives might only be available if Plaintiffs signed up that day. (*Id*. ¶ 47). The salesperson would then produce an electronic copy of the Sales Agreement on his or her tablet for the Plaintiffs to review. (*Id*. ¶ 48).

The salesperson scrolled through the provisions of the Sales Agreement "at a rapid and unacceptable pace" while providing to each set of Plaintiffs an erroneous interpretation of the Sales Agreement's content. (*Id*. ¶ 50). Plaintiffs noted their assent to the Sales Agreement via an electronic signature program which auto-filled Plaintiffs' initials after the review of each paragraph. (*Id*. ¶ 51). The salesperson never discussed the restrictive clauses contained in the Sales Agreement, which included an arbitration clause. (*Id*. ¶ 52). The salesperson then confirmed financing for the sales of the solar equipment through one or more financial institutions chosen exclusively by the Pink Energy Group. (*Id*. ¶¶ 54–55). The salesperson reviewed the Loan Agreement through which Plaintiffs secured the financing with either GoodLeap or the Digital Federal Credit Union in the same problematic manner as he or she presented the Sales Agreement. (*Id*. ¶¶ 57–61). "Upon information and belief," Plaintiffs were not provided the option of securing alternative financing from other financial institutions. (*Id*. ¶¶ 54–55).

The Pink Energy Group retained one or multiple installation crews and/or subcontractor crews to install the solar panel systems in Plaintiffs' homes. (*Id*. ¶¶ 65–67). Although the Pink Energy Group represented to Plaintiffs that the solar panel equipment was completely installed, the systems were never fully or consistently activated. (*Id*. ¶ 73). The systems never provided the cost savings or energy production promised by "Defendants and/or Pink Energy." (*Id.* ¶ 80). Despite Plaintiffs' outreach, Defendants and Pink Energy have failed to fix the issues with Plaintiffs' solar equipment and, after a while, started to ignore Plaintiffs' calls for customer support. (*Id*. ¶ 81). As a result, Plaintiffs' electric bills have remained largely unchanged since installing the solar equipment. (*Id*. ¶ 79). Plaintiffs must also now pay an additional bill for the resulting loan payment. (*Id*.).

**B. Procedural Background**

Plaintiffs filed their original Complaints between July 26, 2022 (*Hutzell*, ECF No. 1), and August 24, 2022 (*Berger*, ECF No. 1). Defendant GoodLeap filed its first Motion to Dismiss and Compel Arbitration in these cases on October 4, 2022. (*Hutzell*, ECF No. 12; *Heiland*, ECF No. 8; *Whitaker*, ECF No. 2; *Annon*, ECF No. 5; *Farag*, ECF No. 5; *Spencer-Ward*, ECF No. 6; *Steffen*, ECF No. 6; and *Shultz*, ECF No. 4). On and around November 18, 2022, Plaintiffs filed their first Motions to Conduct Limited Discovery on Whether the Arbitration Provisions at Issue are Enforceable. (*Hutzell*, ECF No. 28; *Heiland*, ECF No. 26; *Whitaker*, ECF No. 18; *Annon*, ECF No. 20; *Farag*, ECF No. 21; *Spencer-Ward*, ECF No. 21; *Steffen*, ECF No. 23; *Shultz*, ECF No. 21). On November 23, 2022 (but in the *Berger* case, January 18, 2023), Defendant Waller filed his first Motion to Dismiss for Failure to State a Claim. (*Hutzell*, ECF No. 33; *Heiland*, ECF No. 31; *Whitaker*, ECF No. 21; *Annon*, ECF No. 23; *Berger*, ECF No. 10; *Farag*, ECF No. 24; *Spencer-Ward*, ECF No. 24; *Steffen*, ECF No. 27; *Shultz*, ECF No. 24).

On December 14, 2022, an Amended Complaint (the "*Berger* Complaint") was filed in *Berger*, making it the active Complaint in that case. (ECF No. 53; *Berger*, ECF No. 12). Defendant Waller filed his operative Motion to Dismiss for Failure to State a Claim against the *Berger* Complaint on January 18, 2023. (*Berger*, ECF No. 18). On January 9, 2023, this Court ordered the above-captioned cases to be consolidated under *Hutzell*. (ECF No. 50). On February 21, 2023, Plaintiffs in the remaining eight cases filed their Consolidated Amended Complaint (the "Consolidated Complaint"). (ECF Nos. 59–66).

Plaintiffs' Consolidated Complaints bring forth thirteen claims against Defendants. (ECF Nos. 59–66; *Berger*, ECF No. 12). Berger's Amended Complaint is identical to the Consolidated

Complaints, with the exception that it replaces Defendant GoodLeap, LLC with Defendant

Federal Digital Credit Union. The thirteen claims are as follows:

- Count I: Breach of Contract;
- Count II: Fraudulent Misrepresentation;
- Count III: Negligent Misrepresentation;
- Count IV: Fraud in the Inducement/Execution;
- Count V: Declaratory Judgment to Void the Undisclosed Arbitration and Limitation of Liability Clauses in the Sales Agreement;
- Count VI: Declaratory Judgment to Void the Undisclosed Arbitration and Limitation of Liability Clauses in the Loan Agreement;
- Count VII ;
- Count VIII: Breach of Warranty;
- Count IX: Violations of the Ohio Consumer Protection Act[2];
- Count X: Civil Conspiracy;
- Count XI: Negligence;
- Count XII: Declaratory Judgment to disregard Power Home Solar's limited liability protection form and hold Defendant Waller Personally Liable for any and all damages associated with his formulation, direction, and control over Pink Energy's fraudulent sales and marketing practices; and
- Count XIII: Punitive Damages

On March 7, 2023, Defendant Waller filed his operative Motions to Dismiss the

Consolidated Amended Complaint. (ECF Nos. 68–75). On the same day, Defendant GoodLeap

filed its Motions to Dismiss the Consolidated Complaint and Compel Arbitration. (ECF Nos. 76–

83). On March 21, 2023, Defendant Trivest filed its Motion to Dismiss the Consolidated

Complaint. (ECF No. 84). On March 28, 2023, Plaintiffs again filed a Combined Motion for

Limited Discovery relevant to the determination of whether the arbitration provisions are

enforceable. (ECF No. 85). On May 22, 2023, Defendant Trivest filed another set of Motions to

Dismiss the First Amended Complaint (ECF Nos. 110–117).

These motions are ripe for this Court's consideration.

---

[2] Although Plaintiffs refer to the "Ohio Consumer Protection Act," there is no such legislation. This Court proceeds with the understanding that Plaintiffs intended to bring this claim under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code §§ 1345.01 *et seq.*

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

This Court may dismiss a cause of action due to lack of jurisdiction. Rule 12(b)(2) permits a defendant to file a motion to dismiss based on a court's lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(2). In ruling on a jurisdictional motion to dismiss without conducting an evidentiary hearing, the court "must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). The plaintiff "need only make a *prima facie* showing of jurisdiction" to defeat the motion. *Id.* (italics added). Making such a showing requires the plaintiff to "demonstrate facts which support a finding of jurisdiction . . . . " *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (internal quotation marks omitted). When reviewing this motion, the court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

### B.  Motion to Dismiss for Failure to State a Claim

This Court may also dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court

9

cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finally, the complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### C.  Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 2 *et* seq., arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2022). If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4 (2012). The court must then direct the parties to proceed in arbitration if it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id*. Given the "strong federal policy in favor of arbitration," any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 395 (6th Cir. 2014). In the absence of any express provision excluding a given grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. (internal quotations and citations omitted). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (Marbley, J.).

### III.   LAW AND ANALYSIS

The various relevant motions filed by the parties after the Consolidated Amended Complaint restate all the bases for relief asserted in the earlier versions of those motions. This Court thus considers the most recent, post-amendment motions to be the operative set.

#### A.  Defendant Waller's Motion to Dismiss for Failure to State a Claim

Defendant Waller argues that he should be dismissed from this lawsuit because: (1) Plaintiffs never allege that he was directly involved in the events that caused their injuries; and (2) even if they had, he is not individually liable for his role in Pink Energy's actions because he was a mere corporate officer. Further, Defendant Waller contends that some of the claims brought by the *Hutzell* and *Annon* Plaintiffs are time-barred.

Plaintiffs respond that their Consolidated Complaint sufficiently alleges that Defendant Waller was intimately involved in the day-to-day operations of Defendant Pink Energy. Plaintiffs' Consolidated Complaint alleges that Defendant Waller developed and taught to Pink Energy's salespeople the very same deceptive sales techniques that were then used to victimize

11

Plaintiffs. Specifically, Plaintiffs allege that Defendants knowingly conspired to sell and execute financing agreements for overpriced and defective solar equipment. Plaintiffs allege that, at a minimum, Defendant Waller was heavily involved with Pink Energy and knew that his employees were using fraudulent sales techniques to convince Plaintiffs to purchase defective solar equipment.

Under Ohio law, a corporate officer may not normally be held liable for the debts or acts of a corporate entity. *State ex rel. DeWine v. Osborne Co.*, 11th Dist. No. 2016-L-091, 2018-Ohio-3109, 104 N.E.3d 843, ¶ 65. A corporate officer can be held liable, however, pursuant to either alter ego doctrine or personal participation theory. *Id*. at ¶¶ 65–66.

The alter ego doctrine applies where, "upon piercing the corporate veil, it appears that a corporation is simply the alter ego of the individual sought to be held liable." *Id*. at ¶ 65 (internal quotation marks omitted). In such instances, "the corporation is so dominated by the shareholder that it has no separate mind, will, or existence of its own." *Belvedere Condo. Unit Owners' Assoc. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 617 N.E.2d 1075, 1086 (Ohio 1993). "Some of the factors used to determine if this standard has been met include: "(1) whether corporate formalities were observed; (2) whether corporate records were kept; (3) whether corporate funds were commingled with personal funds; and (4) whether corporate property was used for a personal purpose." *Rossisa Participacoes S.A. v. Reynolds & Reynolds Co.*, No. 3:18-CV-00297, 2019 WL 4242937, at *15 (S.D. Ohio Sept. 6, 2019) (quoting *Pottschmidt v. Klosterman*, 9th Dist. No. 06CA0041-M, 169 Ohio App.3d 824, 2006-Ohio-6964, 865 N.E.2d 111, ¶ 37). The Ohio Supreme Court articulated formally the following three-element test that must be satisfied in order to pierce the corporate veil:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2)

> control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 18 (quoting *Belvedere*, 67 Ohio St.3d at 288–289, 617 N.E.2d 1075).

Under personal participation theory, a plaintiff need not pierce the corporate veil to hold individuals personally liable for their tortious acts. *State ex rel. DeWine*, 11th Dist. No. 2016-L-091, 2018-Ohio-3109, 104 N.E.3d 843, at ¶ 66. As an initial observation, it is unclear whether "personal participation theory" applies outside of environmental enforcement actions. *See Ohio ex rel. DeWine v. Breen*, 362 F. Supp. 3d 420, 442 (S.D. Ohio 2019) (describing the theory as appliable "pursuant to an environmental enforcement action."); *but see Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 WL 848948, at *19, 21 (N.D. Ohio Mar. 5, 2021) (implicitly recognizing the applicability of personal participation theory to a breach of contract action while noting, without further elaboration, that "Ohio courts have applied this personal participation theory of liability to some statutory violations as well."). At any rate, however, a corporate officer "may not be held liable merely by virtue of his status as a corporate officer." *Id.* at ¶ 67.

This Court finds that Plaintiffs fail to state a claim against Defendant Waller under alter ego doctrine or based on personal liability. Plaintiffs' allegations must establish that Defendant Waller either maintained extensive control of the company giving rise to alter ego liability or committed acts rendering him personally liable. Plaintiffs fail to do either.

This Court finds it helpful to review Plaintiffs' accusations against Defendant Waller—omitting their numerous conclusory allegations and legal conclusions. Many of the allegations against Defendant Waller are directed toward a group Plaintiffs term the "Pink Energy Group,"

13

consisting of Pink Energy, Trivest, and Waller. The allegations against Defendant Waller are limited to the following: Defendant Waller was "intimately involved" in designing, implementing, and teaching the "fraudulent" sales practices employed by Pink Energy. (ECF No. 59 ¶ 24). Between 2017 and "[s]ometime after 2018," Defendant Waller attended "all or substantially all of the Pink Energy's sales meetings" and routinely encouraged the company's sales representatives to engage in hard-sell tactics. (*Id*. ¶¶ 26–27). Defendant Waller published a book in 2021 in which he described his approach to sales which, "upon information and belief," were the same tactics used by Pink Energy salespeople to secure sales from Plaintiffs. (*Id*. ¶¶ 28–29). Plaintiffs then dedicate several paragraphs to discussing Defendant Waller's alleged conduct at *another* company and his being subject to "multiple state enforcement actions" as a result. (*Id*. ¶¶ 30–36). Plaintiffs then allege that Pink Energy, "through Defendant Waller," sold Defendant Trivest an ownership interest in the company. (*Id.* ¶¶ 39–40). Defendant Waller and Trivest soon thereafter collaborated on "implementing a series of improvements" in Pink Energy. (*Id*. ¶ 40). Throughout this time, "[u]pon information and belief," Defendant Waller maintained hands-on control of the day-to-day activities of the business. (*Id.* ¶ 119). The remaining factual allegations concern either other actors or the joint works of the "Pink Energy Group." Plaintiffs' accusations against Defendant Waller merely concern his assistance, as a company officer, in devising strategies that the *company* implemented.

Alter ego doctrine is inapplicable here. Plaintiffs' allegations do not even satisfy the first prong of the veil-piercing test articulated in *Belvedere*. Although Plaintiffs fail to mention what Defendant Waller's position at Pink Energy is, their allegations do indicate that Waller was "intimately involved" with the company's day-to-day operations and had enough influence to convince or cause Pink Energy to sell a 25% stake to Trivest. Indeed, Plaintiffs' twelfth cause of

14

action seeks a declaratory judgment disregarding Pink Energy's corporate form in order to hold Defendant Waller personally liable in this case. The only allegations underlying that cause of action are that Defendant Waller "has maintained and held himself out as maintaining hands-on control of the day-to-day operations of Pink Energy." (ECF No. 59 ¶ 206). Plaintiffs also reason that, since Defendant Waller was allegedly found by other courts to have engaged in deceptive trade practices in other companies, "upon information and belief," Waller committed the same misdeeds at Pink Energy. (*Id.* ¶¶ 207–208). Plaintiffs make no allegations otherwise indicating that Defendant Waller exercised complete or near-complete dominion over the company to the extent that it lacked any effective autonomy. Instead, Plaintiffs' allegations that Defendant Waller worked in *concert* with Defendant Trivest, an active shareholder with 25% ownership of the company, weigh against such a conclusion. As such, Plaintiffs' contention that the alter ego doctrine applies in this instance fails.

Plaintiffs also fail to make any allegations which, if proven, would render Defendant Waller liable for their alleged injuries under personal participation theory. Again, the potential application of personal participation theory relies upon Plaintiffs' ability to show that the corporate officer "can be held personally liable for tortious acts he or she has committed[.]" *State ex rel. Yost v. Leonard*, 5th Dist. Stark No. 2020 CA 00113, 2021-Ohio-613, ¶ 14.

Plaintiffs' claims against Defendant Waller all concern his actions as a corporate officer and rely upon his influence upon the *company*. Plaintiffs do not, however, make allegations that implicate Defendant Waller in the various causes of action they assert in their Consolidated Complaint. Plaintiffs do not allege that Defendant Waller himself ever interacted with them. Plaintiffs do not allege that the employees with whom they contracted utilized Defendant Waller's teachings or instructions in the process of defrauding Plaintiffs. Plaintiffs' allegations

15

that Defendant Waller created Pink Energy's initial sales strategy or was implicated in problematic activity concerning *another* company have no relevance to their injuries. In short, Plaintiffs complain that personnel working on behalf of Defendants Pink Energy and GoodLeap/Digital Federal Credit Union defrauded them by knowingly deceiving them into purchasing defective devices and executing loans to fund the purchases. Even if Defendant Waller "routinely pushed for the company's sales representatives to engage in hard-sell tactics," Plaintiffs make no allegation that he pushed for them to sell the defective systems at issue in this case or even knew about the alleged misdeeds giving rise to their injuries. In fact, Plaintiffs make no allegation that Defendant Waller even had authority over the activities giving rise to their injuries. Although Plaintiffs also allege that Defendant Waller was involved in a civil conspiracy with the other Defendants, Ohio courts have found that "when all the alleged coconspirators are members of the same corporate entity, there are not two separate 'people' to form a conspiracy." *Hawes v. Downing Health Techs. L.L.C.*, 8th Dist. Cuyahoga No. 110920, 2022-Ohio-1677, ¶ 63, *appeal not allowed*, 2023-Ohio-1326, ¶ 63 (collecting cases). Given that Waller is or was a member of the corporate entity Pink Energy, Plaintiffs' conspiracy claim also fails.

Because Plaintiffs fail to make any allegations against Defendant Waller giving rise to liability, Defendant Waller's Motions to Dismiss are hereby **GRANTED**. Defendant Waller is hereby dismissed from this action.

**B. Defendant GoodLeap's Motion to Dismiss and Compel Arbitration and Plaintiffs' Motion to Conduct Limited Discovery**

This Court next considers Defendant GoodLeap's Motion to Dismiss and Compel Arbitration as to all Plaintiffs except the *Berger* Defendants. In the briefing on this Motion, the parties debate the enforceability of the arbitration clause contained in the Loan Agreements that

Plaintiffs signed. Plaintiffs filed a Combined Motion to Conduct Limited Discovery responsive to the issue of whether the Loan Agreements compel arbitration of their claims. GoodLeap opposes the Motion and requests that this Court order Plaintiffs to reimburse GoodLeap for attorney's fees incurred in responding to the Motion.

GoodLeap argues that Plaintiffs' claims should be dismissed because the arbitration clause contained in their Loan Agreements is enforceable. GoodLeap disputes Plaintiffs' characterization of the arbitration agreement as invalid on the basis that they were fraudulently induced to sign the Loan Agreements. Even if the Loans Agreements were invalid, GoodLeap contends that Plaintiffs failed to allege that GoodLeap made misrepresentations specific to the arbitration agreement. Although Plaintiffs object that the Pink Energy representative scrolled through the Loan Agreements at a "rapid and unacceptable pace" and failed to tell them about the arbitration agreement, GoodLeap contends that the representative was not required to explain the agreement. GoodLeap also argues that Plaintiffs' claims that the Loan Agreement was substantively unconscionable are unavailing because Plaintiffs fail to show that the *contractual terms* were unfair. GoodLeap contends that the parties unambiguously agreed that any issues concerning the validity of the arbitration agreement would be decided by the arbitrator. Because Plaintiffs cannot show that they were defrauded or coerced into signing the Loan Agreement, the agreement is not procedurally unconscionable.  Further, GoodLeap adds, the Agreement contains no express exclusion of any claims from arbitration.

With respect to Plaintiffs' Motion, GoodLeap denies that the Court requires further information to make its determination on arbitration because any information germane to the enforceability of the Loan Agreement, the arbitration clause, and the delegation clause is already within Plaintiffs' possession.

Plaintiffs respond that the arbitration agreement is procedurally unconscionable because they were fraudulently induced to sign the Loan Agreements. Plaintiffs marshal five factual allegations to support their position: (1) Plaintiffs' signatures and initials were affixed to the Loan Agreements using auto-filling software; (2) Plaintiffs were each given an inaccurate and rapid summary of the Loan Agreement (and did not read its provisions themselves); (3) Plaintiffs were never provided with an accurate explanation of the arbitration provision; (4) Plaintiffs were assured that the inaccurate characterizations of the loan provided to them by the representative were memorialized in the Loan Agreements; and (5) Plaintiffs were told that their ability to receive various rebates, credits, and discounts were conditioned on their immediate signature on their individual contracts. Plaintiffs also argue that the Loan Agreement's delegation clause assigning to arbitration the threshold matter of the arbitration clause's enforceability is void because Plaintiffs were fraudulently induced to sign the Agreement. Finally, Plaintiffs contend that the arbitration provision is substantively unconscionable because it requires GoodLeap to pay merely a portion of the arbitration fees; expressly prohibits Plaintiffs from being involved in class actions; requires arbitration by JAMS; and does not require GoodLeap to arbitrate its claims against Plaintiffs.

The FAA recognizes arbitration agreements to be on equal footing with other types of contracts and thus requires courts to enforce them by their terms. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010). If the court is satisfied that the making of the agreement or the failure to comply therewith is not in issue, it may order the parties to arbitrate their dispute consistent with the arbitration agreement's terms. *Id*. at 68. If the arbitration agreement contains a delegation provision empowering the arbitrator to resolve questions of enforceability, a party must challenge the delegation provision itself to garner court review. *Id*. at 72. As explained by

the Sixth Circuit, "a valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022). To "challenge" the delegation provision, a party's contentions must be "specific to language in the delegation provision." *Id*. In other words, if a party's challenge to a delegation clause "simply recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole," he or she fails to challenge the delegation clause validly and arbitration is proper. *Id*. at 356.

Arbitration is proper in this case because Plaintiffs fail to make a challenge specific to the delegation clause distinct from their challenge to the Loan Agreement itself.

The first consideration is whether the Loan Agreement contains a delegation clause. In their Consolidated Complaint, Plaintiffs deny the very existence of a delegation clause in the Loan Agreement. (ECF No. 59 ¶ 147). This contention is disproved by Paragraph 15 of the Loan Agreement, entitled "Arbitration Agreement," which provides, in relevant part:

> [a]ll claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues).

(ECF No. 59-3 at 7).

The Sixth Circuit's decision in *Becker* is instructive. In that case, the plaintiff, Becker, filed suit against two companies—a company called Delek and a contractor for Delek called Cypress—for unpaid overtime allegedly owed to him under the Fair Labor Standards Act. 39 F.4th at 354. Becker worked directly for Cypress, which in turn assigned him to a placement at Delek. *Id.* The defendant companies argued that the employment contract signed by Becker contained a delegation provision within its arbitration clause that transferred the question of

arbitrability to an arbitrator. *Id*. at 355. Becker did not dispute the existence or validity of his employment contract with Cypress but contended it did not apply to his relationship with Delek, who was not a party to the contract. *Id*. Although Becker expressly challenged "the existence of an agreement to arbitrate, and any agreement to arbitrate arbitrability[] with Delek," the Sixth Circuit found that the challenge was not specific enough to enforce judicial review. *Id*. This is because Becker's challenge concerning whether Delek could enforce the delegation clause relied on the same bases as those upon which he challenged Delek's ability to enforce the agreement itself. *Id*. at 355–56.

This case is similar. Plaintiffs here challenge the enforceability of the delegation provision because Pink Energy's sales representatives allegedly misrepresented the terms of the Loan Agreement. To the extent that Plaintiffs challenge the delegation provision, they do so on the same bases that they dispute the enforceability of the overall Loan Agreement. (ECF No. 59 ¶¶ 136–49). These allegations are that the sales representative scrolled through the Loan Agreement at a rapid pace; failed to explain the document's terms with accuracy; used auto-filled signature software to show Plaintiffs' consent; and utilized high-pressure sales tactics to encourage Plaintiffs to agree to the *Loan Agreement* immediately. (*Id*.).

Because Plaintiffs' challenge is not specific to the delegation provision, the question of whether the arbitration agreement is enforceable is for an arbitrator to decide. *See Becker*, 39 F.4th 351, 356 (6th Cir. 2022). The only remaining determination is whether to stay this case pending the outcome of arbitration. When all claims fall under the scope of an arbitration agreement, courts are to dismiss the action without prejudice, as the Court has no role in the action other than to enforce an arbitration award. *Corey v. Allergan, Inc.*, No. 13-CV-00660, 2014 WL 4557616, at *2 (S.D. Ohio Sept. 12, 2014) (Marbley, J.) (citing *Orcutt v. Kettering*

*Radiologists, Inc.*, 199 F.Supp.2d 746, 757 (S.D.Ohio 2002)). In this case, the delegation provision assigns to the arbitrator all questions concerning the enforceability and scope of the arbitration provision, as well as the jurisdiction to decide the merits of the related dispute against GoodLeap. Accordingly, it is appropriate for this Court to dismiss, rather than stay, Plaintiffs' claims against GoodLeap. *See Carey v. Uber Techs., Inc.*, No. 1:16-CV-1058, 2017 WL 1133936, at *8–9 (N.D. Ohio Mar. 27, 2017). For this reason, GoodLeap's Motion is **GRANTED** and Plaintiffs' claims against it are **DISMISSED**.

Plaintiffs' Motion for Limited Discovery are **DENIED AS MOOT**. Because Defendant GoodLeap fails to cite the provision under which it requests the attorney's fees it incurred for responding to Plaintiffs' Motion or to provide argument on why this relief is warranted, this Court **DENIES** its request.

### C. Defendant Trivest's Motion to Dismiss

This Court finally considers Defendant Trivest's Motion to Dismiss the Consolidated Complaint, which argues that Trivest should be dismissed from this suit for three reasons.

First, Defendant Trivest contends that this Court lacks personal jurisdiction over it. Trivest argues that this Court lacks general personal jurisdiction because Trivest is neither incorporated in Ohio nor maintains its principal place of business in Ohio. With respect to specific personal jurisdiction, Trivest argues that Plaintiffs failed to allege any plausible factual allegations connecting it to Ohio in any meaningful way or accusing it of having conducted in-forum activities that proximately caused Plaintiffs' injuries.

Second, Defendant Trivest contends that all of Plaintiffs' claims fail because the Consolidated Complaint attempts to attribute actions of other parties to Trivest in disregard of the corporate form. Trivest argues that Plaintiffs did not allege that they ever directly or

indirectly contracted or interacted with Trivest. Further, Trivest argues, two of the Plaintiffs'
Ohio Consumer Sales Practices Act ("OCSPA") claims are barred by the applicable two-year
statute of limitations. Third, Trivest contends that this Court should dismiss the Consolidated
Complaint because a similar nationwide class action was filed in the Eastern District of Michigan
and the resolution of that case could resolve the consolidated cases.

Plaintiffs respond that Trivest is directly liable for its misdeeds given that it represents
itself to be a "control-based" private equity investor. Relatedly, Plaintiffs argue that this Court
has specific jurisdiction over Trivest because Trivest helped execute a scheme to sell defective
solar equipment to Ohio residents. This scheme included Trivest's involvement in developing the
misrepresentation-based sales strategy employed by Pink Energy to sell the defective products;
undertaking Pink Energy's hiring and recruitment processes; hiring sales representatives who
misrepresented the efficacy of the product to customers; and training the sales representatives to
use deceptive sales techniques on customers.

Plaintiffs next argue that they *have* alleged that Defendant Trivest is liable both as a co-
conspirator with the other Defendants and based on Trivest's own conduct. Plaintiffs claim that
their OCSPA claims are not time-barred because the statute of limitations began to run when the
solar panel systems were first *installed* instead of when the contracts were entered into. Finally,
Plaintiffs argue that the first-to-file rule is inapplicable because the competing case involves
substantially different claims and parties.

As previously explained, the Supreme Court of Ohio applies the *Belvedere* test for
piercing the corporate veil when determining whether an individual shareholder may be held
liable for a corporation's misdeeds. *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-
1247, 905 N.E.2d 613, ¶ 11. Under this test, the corporate veil may be pierced when: "(1) control

over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *In re Moldovan*, 636 B.R. 491, 498 (Bankr. S.D. Ohio 2021) (citing *Belvedere*, 67 Ohio St. 3d 274, 289, 617 N.E.2d 1075 (Ohio 1993)).

Plaintiffs fail to allege a plausible claim against Trivest, even assuming the existence of personal jurisdiction. All of Plaintiffs' allegations against Trivest relate to its involvement in Pink Energy's hiring practices, marketing strategy, and sales tactics. Nowhere in their Consolidated Complaints do Plaintiffs allege that Trivest *itself* contracted with or had any interaction with Plaintiffs, nor that Trivest had an employment relationship with the Pink Energy salespeople. In fact, Plaintiffs do not allege that Trivest engaged in any misdeeds at all aside from its assistance in enabling the other Defendants to commit their misdeeds. In short, Plaintiffs' claims seek to render Trivest liable for *Pink Energy*'s alleged misdeeds for the mere reason that Trivest was an active shareholder.

Although Plaintiffs characterize Trivest as an investor that "prefers to direct and control its portfolio companies," Plaintiffs also aver that Trivest held only a 25% stake in Pink Energy and implemented improvements in the company "in collaboration with [Defendant] Waller." (ECF No. 59 ¶¶ 41–44). Plaintiffs thus make no viable claim that Defendant Trivest maintains control over Pink Energy. For this reason, Plaintiffs fail to demonstrate that alter ego doctrine applies to their claims against Defendant Trivest.

Plaintiffs try another tactic: characterizing Pink Energy's employees as agents of both Trivest and Pink Energy. Ohio law indicates, however, that a complaint relying on an agency theory of liability "must plead facts which, if proved, could establish the existence of an agency relationship." *Sophia's Cure Inc. v. AveXis, Inc.*, No. 2:16-CV-865, 2017 WL 4541449, at *6 (S.D. Ohio Oct. 10, 2017) (internal quotation marks omitted). The hallmark of an agency relationship "is the right of a principal to control the conduct of an agent when the agent is performing work for it." *Id*. Plaintiffs' Consolidated Complaints allege no facts tending to show that the salespeople who allegedly defrauded Plaintiffs were directed by Defendant Trivest. The fact that Trivest held only a minority stake in Pink Energy makes this even less likely.

Not all of Plaintiffs' causes for action require that they prove Trivest exerted control over other entities. Plaintiffs also bring a claim for civil conspiracy. Under Ohio law, Plaintiffs must demonstrate the following: "(1) a malicious combination of two or more persons; (2) causing injury to another person or property; and (3) the existence of an unlawful act independent from the conspiracy itself." *Woods v. Sharkin*, 8th Dist. No. 110567, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 103, *appeal not allowed*, 168 Ohio St.3d 1480, 2022-Ohio-4617, 200 N.E.3d 258, ¶ 103. The alleged co-conspirators must have acted "in concert" to injure Plaintiffs through an unlawful act. *See Key Realty, Ltd. v. Hall*, 6th Dist. No. L-19-1237, 2021-Ohio-1868, 173 N.E.3d 831, ¶ 124, *aff'd*, 167 Ohio St.3d 152, 2022-Ohio-1199, 189 N.E.3d 785, ¶ 124. Further, each conspirator must act with malice—"that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 927 (N.D. Ohio 2007) (quoting *Pickle v. Swinehart*, 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960)).

Although Plaintiffs argue that Trivest had *knowledge* of the alleged misconduct being undertaken by the other Defendants, Plaintiffs do not produce any factual support for their conclusory allegations that "Defendant Trivest's conduct was knowing, intentional, reckless, and malicious." (ECF No. 59 ¶¶ 188, 192). The only allegations that Plaintiffs make against Trivest outside of its minority ownership in Pink Energy is that it worked with Pink Energy to improve its practices and became involved in the hiring and recruitment of Pink Energy's employees. These allegations are insufficient to show, even if proven, that Trivest worked in concert with Pink Energy to defraud customers or that Plaintiffs' injuries are traceable to Trivest's activity. Plaintiffs thus fail to plead a claim for civil conspiracy.

Defendant Trivest's Motion to Dismiss is thus **GRANTED**. Defendant Trivest submitted a second set of Motions to Dismiss (ECF Nos. 110–117) that is nearly identical to the earlier-filed Motion to Dismiss and which targets the same Consolidated Complaint. Because this Court herein grants the earlier-filed Motion to Dismiss (ECF No. 84), Defendant Trivest's second set of Motions to Dismiss (ECF Nos. 110–117) is **DENIED AS MOOT**.

## IV.    CONCLUSION

Based on the foregoing, this Court **GRANTS** Defendant Jayson Waller's Motions to Dismiss the *Berger* Plaintiffs' Amended Complaint (ECF No. 53); Defendant Jayson Waller's Motions to Dismiss Plaintiffs' Amended Complaint (ECF Nos. 68–75); Defendant GoodLeap, LLC's Motions to Dismiss Amended Complaint and Compel Arbitration (ECF Nos. 76–83); and Defendant Trivest Partners, L.P.'s Motion to Dismiss the Complaint (ECF No. 84). This Court **DENIES AS MOOT** Plaintiffs' first Motion to Conduct Limited Discovery on Whether the Arbitration Provisions at Issue are Enforceable (ECF No. 28); Defendant Jayson Waller's first Motion to Dismiss for Failure to State a Claim (ECF No. 33); Plaintiffs' Combined Motion for

Limited Discovery (ECF No. 85); and Defendant Trivest Partners, L.P.'s Motions to Dismiss the First Amended Complaint (ECF Nos. 110–117).

Specifically, Plaintiffs' claims are dismissed with respect to Defendant Waller, Defendant Trivest Partners, L.P., and Defendant GoodLeap, LLC. Plaintiffs (with the exception of the *Berger* Plaintiffs, who did not name GoodLeap, LLC as a party) are **ORDERED** to submit their claims against GoodLeap, LLC to arbitration according to the terms of the Loan Agreement.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 2, 2023**